**ROBERT E. LEE, Inc., Bankrupt, In re.**

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION

No. 71937. Decided December 9, 1954.

364

Harry C. Bogart, Elyria, Attorney for the Grafton Lumber & Concrete Co.
Meyer Gordon, Lorain, Richard S. Horan, Elyria.

## CERTIFICATE OF REVIEW
By WOODS, Referee in Bankruptcy.

To the Honorable Judges of the United States District Court, for the Northern District of Ohio, Eastern Division, sitting in Bankruptcy:

I, William B. Woods, Referee in Bankruptcy, in charge of the above proceedings, do hereby certify:

That in the course of the proceeding, Richard S. Horan, Receiver, and later Trustee of bankrupt corporation, filed his Petition to Sell all the property of Robert E. Lee, Inc., of Elyria, Ohio. To this petition the Grafton Lumber & Concrete Co. of Grafton, Ohio, filed its Answer objecting to any summary jurisdiction over it; and the Answer further avers that the property, particularly the Ford dump truck in controversy, standing in the name of Carlton E. Lee in the Ohio Certificate of Title, alleges that said Carlton E. Lee gave a mortgage on said Ford truck in the amount of $3,000 to the answering Defendant, and further admits that said answering Defendant is in possession of said Ford dump truck, and claims its possession and ownership of said property by virtue of said mortgage.

An Order of Sale of the chattel property of bankrupt was entered and the sale by the trustee proceeded, except that the items claimed by the mortgage of The Grafton Lumber & Concrete Co. were continued for further order of the Court, which left for decision by the Court the question of the ownership of said Ford dump truck; and whether the mortgage given by said Carlton E. Lee to The Grafton Lumber & Concrete Co. constituted a preference or a fraudulent transaction, because given within four months before bankruptcy and for a past consideration.

Upon hearing had and the filing of briefs, an order was entered on Sept. 28, 1954, denying the ownership of said Ford dump truck in the answering cross-petitioner, and finding its claim to lien on the truck invalid; and holding such truck to be the property of Trustee of bankrupt, and thereafter on Oct. 7, 1954, the Grafton Lumber & Concrete Co. filed its Petition to Review said order.

Thereafter, on Nov. 10, 1954, an order was entered by consent of all parties that the said Ford dump truck to be sold, and that the funds derived therefrom be held by the Trustee until this controversy is concluded, without prejudice to the rights of any party.

### Statement of the Case

At the hearing it developed that said Robert E. Lee, Inc., general contractors of Elyria, Ohio, filed a voluntary petition in bankruptcy on May 25, 1954. The corporation had three stockholders and directors, Robert E. Lee, his brother, Carlton E. Lee, and Robert R. Wood; and on Sept. 3, 1953, Robert E. Lee sold his business assets to the corporation for $2,000 in corporation stock, and on the same day Carlton E. Lee sold all his business assets to the corporation for $2,000 in corporation stock. Included in the assets sold by Carlton E. Lee was an item of motor vehicles (Trustee Ex. 2,).

Among the motor vehicles thus acquired by the corporation was the Ford motor truck (described as a motor dump truck in bankrupt's schedules) which had been bought by Carlton E. Lee, and the Certificate of Title was issued to him by the Clerk of Lorain County on Jan. 9, 1953 (Grafton Ex. 1) which shows a mortgage to the Savings Deposit Bank of Elyria, Ohio, for $3,303.63, cancelled Feb. 15, 1954; and also shows a mortgage to The Grafton Lumber & Concrete Co. for $3,000 filed May 19, 1954, and not cancelled (Grafton Ex. 3).

The books of account of The Grafton Lumber & Concrete Co. on Feb. 17, 1954, show a debt due from Robert E. Lee, Inc., the bankrupt, in the amount of $7000. The Grafton Lumber & Concrete Co. took a mortgage on the 1952 Ford dump truck, and also placed a lien for $3000 on the so-

**366**

called Pankoff property (Trustee Ex. 2), and the company did not credit the $3000 on the account of bankrupt, but made a statement in writing on Feb. 15, 1954, that only $2100 was due. The testimony by Myles Knechtges, President of The Grafton Lumber & Concrete Co. is: "What does the Company's record?" and his answer was "Pankoff owed me approximately $2100 subsequent to Feb. 15th." (Tr. p. 54)

So the facts are that on Feb. 15, 1954, The Grafton Lumber & Concrete Co. received a mortgage for $3000, placing a lien on the Pankoff property for $3000 and received a check for $2000 or cash (Trustee Ex. 3, page from books of account of bankrupt, page entitled "Bob Lee"); and The Grafton Lumber & Concrete Co. took a mortgage on the dump truck, the title to which is in, question before the Court, and also obtained a mechanic's lien on the Pankoff property for $3164.01, for materials furnished May 3, 1954, so that there arises a dispute on this date as to the amount due from the bankrupt corporation to The Grafton Lumber & Concrete Co. By Trustee's Ex. 3, the book account of The Grafton Lumber & Concrete Co. entitled "Bob Lee * * * Pankoff" account shows a credit of $3000 on April 7, and balance of $164.01 on May 3, 1954, which totals the amount of $3164.01, as in the affidavit of Knechtges made to obtain lien on Pankoff real estate on May 3, 1954.

At the time of the execution of the mortgage, the 1952 Ford dump truck had the legend "Robert E. Lee, Inc.—Better Built Homes" on the side of each door of the said Ford dump truck so that it was notice to the world that the truck belonged to Robert E. Lee, Inc. At the time of the execution of the mortgage, Carlton E. Lee was not indebted to The Grafton Lumber & Concrete Co.

**Findings of Fact**

(1) That Richard S. Horan succeeding himself as receiver, is the duly elected, qualified, and acting Trustee in Bankruptcy of Robert E. Lee, Inc., adjudicated a bankrupt on May 25, 1954.

(2) That Robert E. Lee, Inc., bankrupt, of Elyria, Ohio, was an Ohio corporation; at a special meeting of directors on Sept. 3, 1953, Robert E. Lee and Carlton E. Lee each offered to sell "all the business and assets as of June 30, 1953", to the corporation for $2,000 in corporate stock; and included in the assets of Carlton E. Lee sold by him was the Ford dump truck in controversy (Trustee Ex. 2).

(3) That the motor vehicles thus sold by Carlton E. Lee to the corporation for corporate stock included the Ford dump truck, which Carlton E. Lee had purchased on Jan. 9, 1953, for which Ohio Certificate of Title No. 470389609 was issued by the Clerk of Lorain County (Grafton Ex. 1) showing as first lien a chattel mortgage to Savings Deposit Bank & Trust Co., Elyria, Ohio, for $3,303.63, showing the same discharged and cancelled on Feb. 15, 1954; and said certificate shows a second lien, chattel mortgage of May 19, 1954, to The Grafton Lumber & Concrete Co. for $3,000.

(4) That on Feb. 24, 1954, at request of Myles Knechtges, President of The Grafton Lumber & Concrete Co., Carlton E. Lee executed a chattel mortgage (Grafton Ex. 3) on the back of which is Statement of Claim signed by Milton Knechtges, president, on the truck, to Grafton Lumber & Concrete Co., and on May 4, 1954, Carlton E. Lee also executed a statement on the corporate letterhead of the corporation stating that the truck

became the property of the Robert E. Lee, Inc., at the time the corporation was formed, Sept. 3, 1953, and "I then relinquished all claims to vehicles * * * title will be transferred at next year's lien beginning—signed Carlton E. Lee" (Trustee Ex. 1).

(5) That the Ford dump truck in question was in fact the property of the bankrupt corporation, Carlton E. Lee having received stock for said dump truck and by agreement with the officers of the company had withheld transfer of Certificate of Title until the licensed year would begin. (Trustee Ex. 1 on Bankrupt's stationery signed by Carlton E. Lee). Also, this dump truck was listed as an asset in the schedules of bankrupt.

(6) That the officers of The Grafton Lumber & Concrete Co. had knowledge of the ownership by it of said truck for the testimony of Carlton E. Lee is, "all the work I did was as an officer of the corporation and Mr. Knechtges knew it at the time, and it was specificaly stated that I was not to do anything personal." (Tr. pg. 20). So The Grafton Lumber & Concrete Co. knew the dump truck was a property of the bankrupt corporation although the Certificate of Title showed it stood in the name of Carlton E. Lee (Tr. pg. 30).

(7) That The Grafton Lumber & Concrete Co. knew that Robert E. Lee, Inc. was unable to pay its bills, and had been delinquent for some time in its account with the lumber company on Feb. 17, 1954, within four months of bankruptcy, when the chattel mortgage was given to secure a past-due debt of the bankrupt corporation to the lumber company; and finally the lumber company admits in its answer and cross-petition that it was in possession of the truck by virtue of seizing it by claim under its mortgage.

## Conclusions of Law

(1) That under the Ohio Statute, if a transfer made in trust or otherwise, in contemplation of insolvency and with a design to prefer and with intent to hinder, delay or defraud creditors, on proof that the transferee knew of such condition of the transferor, such transfer is made with fraudulent intent under the Ohio Statute.

(2) That where the trustee in a bankruptcy proceeding instituted on May 24, 1954, representing creditors and prior to bankruptcy a chattel mortgage was executed on Feb. 24, 1954, and there was no new money but only past consideration for the mortgage, the claim of lien by chattel mortgage fails in bankruptcy under the Ohio Law. Sec. 1335.02 R. C. (8618 GC). Sec. 1313.56 R. C. (11104 GC), §1313.57 R. C. (11105 GC). Bankruptcy Act, Sec. 67d (2), d(5), Sec. 70(c) and (e), 11 U.S.C.A. Sec. 107d (2), d(5), 110 (c) and (e).

(3) That where a motor vehicle Certificate of Title was issued pursuant to the provisions of the Ohio Certificate of Title Act, §4505.04 R. C. (6290 GC), and there has been effected a resulting trust so that the ownership of the vehicle is different than the name set forth in the Certificate of Title, and where there has been fraud in the transaction, such fraud causes such Certificate of Title to be voidable as to the real owner of the motor vehicle, in this case a corporation in bankruptcy.

(4) That while Ohio §4505.04 R. C. (formerly §6290-4 GC) known as the Ohio Certificate of Title Law, makes evidence not admissible to dispute

the title of him to whom a Certificate of Title is issued pursuant to the provisions of the Ohio Certificate of Title Act is true as a general proposition, but there is an exception thereto when the evidence establishes fraud as in the case presented here, such Certificate of Title is voidable.

(5) That the facts established that upon bankruptcy ownership of the truck paid for by the corporation before bankruptcy vest in the trustee of such corporation, and the result is that from the facts presented here, it is established that the Certificate of Title is voidable.

### Memorandum

Two questions are presented: (1) Did the transfer of the Ford dump truck by chattel mortgage constitute a preference or fraudulent transfer of said truck when Carlton E. Lee signed a chattel mortgage on said truck to The Grafton Lumber & Concrete Co. on Feb. 24, 1954, which was within four months of bankruptcy, and a chattel mortgage was given for a past-due consideration, and (2) upon bankruptcy ownership of the truck paid for by the corporation, vested in the Trustee so the result is that the Certificate of Title showing ownership in Carlton E. Lee is voidable as to the Trustee in bankruptcy?

### (1) Fraudulent Transfer or Preference

The question is as to the validity of the mortgage to The Grafton Lumber & Concrete Co. executed by Carlton E. Lee on Feb. 24, 1954, and the mortgagor's claim of lien as against the Trustee of the bankrupt corporation, who claims right to the truck received by preference or fraudulent conveyance to the detriment to the bankrupt's creditors.

A similar case where a mortgage on chattels was taken within four months of bankruptcy as reported in **Re: Wright Industries,** 93 Fed. Supp. 58 (1950), where this Referee held that (1) the mortgage and lien were fraudulent transfers under Sec. 67d (2) of the Bankruptcy Act; (2) the mortgage and lien were preferences under Ohio law; and (3) the mortgage and lien were fraudulent conveyances under Ohio law.

The ruling of this Referee was affirmed by His Honor Judge Jones in that case as so reported, and the lien of defendant was denied, and any claim of defendant was allowed as a general claim. The authorities are discussed at length in that opinion and will not be repeated here since the rule for the instant case can only follow the general rule applicable to such cases, and the **Wright case, supra,** has become a binding precedent for the decision to be here made.

### (2) Certificate of Title Voidable Here On Facts Established

Counsel for the Grafton Lumber & Concrete Co., mortgagee, claims that since the Certificate of Title on file in Lorain County shows the title to the truck in Carlton E. Lee, that fact is conclusively established; counsel relies on §4509.04 R. C., entitled Certificate of Title as Evidence of Ownership, which statute is as follows:

"**Certificate of Title as Evidence of Ownership.** No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; nor shall any waiver

or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration. No court in any case at law or of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or a manufacturer's or importer's certificate issued in accordance with §§4505.01 to 4505.19, inclusive, R. C."

The Ohio Certificate of Title law was enacted "to prevent the importation of stolen motor vehicles, and thefts and frauds in the transfer of title to motor vehicles . . ." 117 Ohio Laws 373. To the same effect is the statement in 6 O. Jur. 2d, Sec. 5, page 176:

"The primary object of such law is to afford an effective means of transferring and recording the evidence of title to motor vehicles in one continuous chain from the beginning to the end of their existence in Ohio, with close co-operation between the various clerks of courts and the Registrar, and to eliminate several well-known and flagrant types of abuse which were perpetrated under the old bill of sale law."

Many cases have been presented to the courts of Ohio involving the force and effect of this statute. The recent case of **Douglas v. Hubbard, 91 Oh Ap 200** (1951), considered the question presented here. In this case Judge Hunsicker said **(p. 202):**

"The pattern of many of these cases is an attempt, by one, not the holder of a certificate of title, to gain possession of a motor vehicle from a party who purchased such motor vehicle in good faith from the then holder of a certificate of title, such purchaser receiving from the vendor a certificate of title valid on its face."

The Judge goes on to consideration of cases and then in the case before him which involves the facts similar to the situation here, he said at **pages 203-205:**

"In the instant case, we do not have the question of a certificate of title to a motor vehicle secured by fraud, or of a third party who purchased a motor vehicle in good faith, relying on the indicia of title contained in a valid certificate of title. We do have an action by one claiming to be the purchaser of a motor vehicle, who through agreement at the time of such purchase, placed the legal title in a person from whom he now seeks to secure a transfer of such legal title; such purchaser claiming that the beneficial interest in the motor vehicle remained with him, the purchaser, while the legal title was in another.

"We come, then, to the controlling question in this appeal, which may be stated as follows: Do the terms of §6290-4 GC, prevent the creation of a trust, the corpus of such trust being a motor vehicle?

"Was it the intention of the Legislature, when it enacted the certificate of title law, to remove from the law of trusts that species of personal property known as motor vehicles, so that under no circumstances could the legal title, as evidenced by a certificate of title, be in one person and the beneficial interest remain in another? We do not believe that any such thought was in the legislative mind when it enacted the statute in question. . . .

"A resulting trust arises in favor of the person who transfers property or causes it to be transferred, under circumstances raising an inference

that he intended to transfer to the other a bare legal title and not to give to such other the beneficial interest in such property. Ohio has always recognized the propriety of one who is the owner of property, to create a trust, which is a right enforceable in equity, to the beneficial enjoyment of such property, while the legal title is in another. The Legislature, in the enactment of the certificate of title law, was concerned with legal title and not beneficial interests. By this legislation, the legislators sought to prevent fraud in the sale of motor vehicles and the sale of stolen motor vehicles. It was not intended to change the substantive law and place motor vehicles outside of the operation of the law of trusts."

So in the situation presented here, while the legal title was in Carlton E. Lee, the ownership, under the principles of the law of trusts, was in the Robert E. Lee, Inc., the parties agreeing to have the correction made, as evidenced by the language in the memorandum on stationery of Robert E. Lee, Inc., of May 4, 1954, (Trustee Ex. 1) signed by Carlton E. Lee, also reciting that "Title will be transferred at next license year beginning. Signed: Carlton E. Lee."

Finally as to the case of Douglas v. Hubbard, supra, the record shows that a motion to certify was filed in the Supreme Court of Ohio and that in 157 Oh St 94 on Feb. 27, 1952, the appeal was dismissed with this entry: "It is ordered and adjudged that this appeal as of right be and the same hereby is dismissed. . ."

Coming now to later holdings on this question as posed by the Certificate of Title statute, the Supreme Court allowed a motion to certify a Court of Appeals decision In Re: Case, 96 Oh Ap 289, reported in Ohio Bar Sept. 24, 1954, and In Re: Case, 161 Oh St 288, proceeded to hear the appeal in a Probate matter where the title to automobiles were in controversy, and held evidence was non-admissible to dispute title to an automobile to whom a Certificate of Title is issued pursuant to the Ohio Statute, "except evidence to establish fraud which would cause such Certificate of Title to be voidable" (Second syllabus). Concluding his opinion Judge Middleton in affirming the court below, said (pg. 294), so the instant case is within this exception:

"It is to be noted that neither fraud nor theft is involved in the instant case. This decision will not control in a situation where the facts may warrant a decision that a certificate of title under the Ohio Act is voidable on account of fraud."

So the Ohio Certificate of Title law was never intended to authorize or permit a creditor of bankrupt to profit by an otherwise voidable preference or a fraudulent transfer made by a failing bankrupt.

Herewith is handed up for consideration of your Honors:

(1) Answer to Trustee's Petition to Sell

(2) Answer of the Sav. Deposit Bank & Trust Co.

(3) Order of Sale

(4) Reply of Trustee

(5) Brief of Defendant, The Grafton Lumber & Concrete Co.

(6) Memorandum of the Defendant, The Grafton Lumber & Concrete Co.

(7) Brief of Trustee

(8) Transcript of Testimony & Proceedings
(9) Order of Sale on 1952 Ford Dump Truck
(10) Petition for Review of The Grafton Lumber & Concrete Co.
(11) Suggested Statement of Facts & Conclusions of Law for Certificate of Review
(12) Statement of Facts & Conclusions of Law by Meyer Gordon

## ROBERT E. LEE, Inc., Bankrupt, In re.

### No. 71648. Decided March 15, 1955.

Memorandum on Review of Order of Sale in re Chattel Property Claimed by the Grafton Lumber & Concrete Company, Petitioner.

## OPINION

By JONES, J:

This matter is before the court on review of an order of the Referee in Bankruptcy approving the sale of a Ford dump truck by the Trustee of the bankrupt corporation.

Briefly, the facts are these. In 1952, Carlton E. Lee purchased a Ford dump truck and title was issued in his name. In September, 1953, upon incorporation of Robert E. Lee, Inc., "A General Contractor," Carlton E. Lee, a director and officer of said company, conveyed certain assets to the corporation among which was the truck in question, in consideration for $2,000 in corporation stock. Title, however, was not assigned to the company but remained in the name of Carlton E. Lee. In February, 1954, a chattel mortgage was executed by Carlton E. Lee to the Grafton Lumber & Concrete Company for $3,000, covering the truck. On May 4, 1954, Carlton E. Lee acknowledged in writing that the truck had become the property of the company at the time of incorporation (September, 1953) and stated that "* * * title will be transferred at the next license year beginning." On May 19, 1954, the chattel mortgage (supra) was filed for recordation by the Grafton Lumber & Concrete Company. On May 25, 1954, Robert E. Lee, Inc., filed a petition in bankruptcy.

Upon these facts and the applicable law, the Referee found:

(1) That ownership of the truck had passed to the company upon incorporation in September, 1953, because, although bare legal title thereafter remained in Carlton E. Lee, the company had paid for the truck ($2,000 in corporation stock), used the truck in its business, and advertised the truck as its own by placing the company insignia on either side of the truck; that in law, a resulting trust had been created in favor of the company.

(2) That the chattel mortgage executed in February, 1954 created a preference in favor of the Grafton Lumber & Concrete Company long a creditor of Robert E. Lee, Inc., but at no time a personal creditor of Carlton E. Lee.

(3) That upon bankruptcy ownership of the truck paid for by the corporation vested in the Trustee.

(4) That the certificate of title showing ownership in Carlton E. Lee is voidable as to the Trustee in Bankruptcy.

Petitioner contests the Referee's finding contending that Ohio Statute, §4505.04 R. C., specifically excludes any evidence as to ownership of a motor vehicle other than the certificate of title, and particularly so in this case since Grafton was an innocent third party purchaser. It is petitioner's conclusion that by virtue of the chattel mortgage, it, not the Trustee, is the rightful owner of the truck.

Upon review of the pleadings and transcripts on file and the cases and statutes cited, the court is satisfied that the conclusions of law and findings of fact by the Referee are just and accurate. The case of **Douglas v. Hubbard, 91 Oh Ap 200** (1951), is inequivocal in stating that the law of trusts may be applied in determining ownership of a motor vehicle under §4505.04 R. C. (supra.) It is also a settled principle of law that a creditor's preference will be disallowed when shown to have been created in contemplation of insolvency. **Revised Code** of Ohio, §§1335.02, 1313.56, 1313.57, Bankruptcy Act, Section 67 d (2), d (5), 70 (c) and (e), 11 U.S.C.A., Section 107 d (2), d (5), 110 (c), and (e), and In Re: Wright Industries, 93 Fed. Supp. 58.

In applying the stated law to the facts in this case, the Referee was confronted with the problem of sifting the truth of the parties' intentions from a questionable series of transactions. And upon the record as a whole his finding that ownership of the truck was intended to and did pass to the corporation prior to the execution of the chattel mortgage (although bare legal title remained in another), and that said mortgage could only have been executed to cover a corporation debt at a time when the parties to the mortgage were or should have been aware of the company's insolvency, or when bankruptcy was actually contemplated, is the only logical conclusion to be reached.

Accordingly, the petition for review will be denied and dismissed and the order of the Referee approved and confirmed.

## ROBERT E. LEE INC., Bankrupt, In re

No. 71648.   Decided March 15, 1955.

The Grafton Lumber & Concrete Company having petitioned this court  for an Order to review and reverse the Order of the Referee herein entered on the 28th day of September, 1954, granting the Petition of Richard S. Horan, Trustee, formerly Receiver of Robert E. Lee, Inc., to sell a Ford dump truck of the bankrupt corporation, free and clear of all encumbrances, and especially the mortgage of the Grafton Lumber & Concrete Company, at public or private sale, and said Petition upon review having thereupon come on to be heard before this Court whereat the Petitioner was represented by Harry Bogart, his Attorney in support of said Petition to review, and the Trustee in Bankruptcy, Richard S. Horan, represented by Meyer Gordon, his Attorney in opposition thereto, now, upon due consideration it is ordered that the Petition for review is hereby denied and dismissed, and the Order of the Referee is approved and confirmed.